DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Vincent Ripepi, appeals from the decision of the Summit County Domestic Relations Court which modified the parties' parenting times and denied Appellant's request for custody of the parties' minor children. This Court affirms.
 I. {¶ 2} Appellant, Vincent Ripepi ("Father"), and Appellee, Karen Ripepi, nka Karen Andrachik ("Mother"), were divorced on November 29, 2000. The decree of divorce included a shared parenting plan for the couple's children, Victoria (DOB July 7, 1993) and Vincent ("Vincie") (DOB July 12, 1995). Pursuant to the shared parenting plan, the children resided with Mother and Father had visitation with the children on weekends, holidays and summer vacation. Father is a doctor who has resided in Pittsburgh, Pennsylvania since 1998 and Mother works at a tae-kwon-do studio. The children have resided with Mother in Hudson, Ohio since 2002. Since the divorce, the parties have informally altered the shared parenting plan.
 {¶ 3} This matter arises out of motions filed by both parties in 2002 regarding financial issues and reallocation of parental rights, responsibilities and visitation time. Father asked, among other things, for reallocation of parental rights and responsibilities, custody of the children and a modification of the shared parenting plan while Mother requested various changes in financial support as well as a modification of the shared parenting plan, which changes would ultimately reduce Father's visitation time. The motions were set for hearing in front of a Magistrate. The Magistrate conducted evidentiary hearings in which she heard testimony from both parties, the children's psychologist and guardian ad litem, the parties' eldest child, the eldest child's teacher, and several of the parties' friends and family. On June 8, 2004, the Magistrate issued a final decision denying Father's requests for custody of the children, reducing the children's summer visitation with Father, modifying the parties' parenting time and determining that both parties shall remain the residential parent. Father filed timely objections to the Magistrate's decision on June 18, 2004. On January 26, 2005, the trial court issued its Final Judgment Entry in which it sustained in part and overruled in part Father's objections to the Magistrate's decision. Father timely filed a notice of appeal from the trial court's order, raising four assignments of error.
 {¶ 4} We have rearranged Father's assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN ITS ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES."
 ASSIGNMENT OF ERROR IV
"THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] OBJECTIONS NOS. 9, 12, 23, 20, 21, 8, 27, 1, 2, 3, 30, AND 31."
 {¶ 5} In his first assignment of error, Father challenges the trial court's decision regarding the parties' parental rights and responsibilities. More specifically, Father contends that the trial court erred in (1) failing to award him custody of the children, (2) reducing his parenting time, (3) striking the testimony of nearly all of his witnesses and (4) failing to consider the Family Court Services' report and recommendation. In his fourth assignment of error, Father argues that the trial court erred in overruling several of his objections. We will examine Father's fourth assignment of error in conjunction with our disposition of his arguments regarding the failure to award him custody of the children, reduction of his parenting time and failure to consider the Family Court Services Social Worker's report as the issues require the same analysis.
Exclusion of Testimony
 {¶ 6} Father contends that the trial court erred in failing to consider testimony of several witnesses that testified on his behalf. More specifically, Father contends that it was impossible for the court to determine the best interests of the children without considering this testimony. We disagree.
 {¶ 7} A trial court is vested with broad discretion to decide matters regarding the allocation of parental rights and responsibilities for the care of minor children. Donovan v.Donovan (1996), 110 Ohio App.3d 615, 618. Therefore, a trial court's decision regarding child custody is subject to reversal only upon a showing of an abuse of discretion. Id.; Miller v.Miller (1988), 37 Ohio St.3d 71, 74 (stating that the abuse of discretion standard applies to child custody cases). This is so because a trial court must have the discretion to do what is equitable based upon the particular facts and circumstances of each case. Booth v. Booth (1989), 44 Ohio St.3d 142, 144, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Additionally, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67; Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 131.
 {¶ 8} Moreover, the knowledge that a trial court gains through its observance of the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record; thus, a trial court is better equipped to examine and weigh the evidence in a custody case. Miller,37 Ohio St.3d at 74, citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13. Therefore, an appellate court must be guided by the presumption that the findings of the trial court are correct. In re Jane Doe1 (1991), 57 Ohio St.3d 135, 138, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 9} R.C. 3109.04 governs the modification of a prior order allocating parental rights. Pursuant to R.C. 3109.04(E), a trial court may only modify a prior decree allocating parental rights and responsibilities when (1) there is a change in circumstances of the child, the child's residential parent, or either of the parents subject to the shared parenting plan and (2) a modification is deemed to be in the best interest of the child. The threshold question in deciding to modify a prior decree allocating parental rights and responsibilities is whether there has been a change in circumstances. See Riggle v. Riggle, 9th Dist. No. 02CA0015, 2002-Ohio-5553, at ¶ 8. In determining whether a change of circumstance has occurred, "the change must be a change of substance, not a slight or inconsequential change." Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418. Thus, a trial court must have wide latitude in considering all the evidence before it in determining whether a change has occurred, and an appellate court will not disturb a trial court's finding absent an abuse of discretion. Id. at paragraphs one and two of the syllabus. The court must base its decision on "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree[.]" R.C.3109.04(E)(1)(a).[1]
 {¶ 10} In its January 26, 2005 judgment, the trial court held that the Magistrate had properly decided not to consider testimony from Father's witnesses that related to Mother's conduct prior to the parties' November 29, 2000 divorce decree. Four of the witnesses whose testimony regarding Mother was not considered in the court's decision expressly stated that they had not observed Mother interact with the children since the parties' November 2000 divorce and/or had not observed Mother interact with the children at any time.[2] Because this testimony did not concern "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree," we find no abuse of discretion in the court's failure to consider this testimony. R.C. 3109.04(E)(1)(a).
Father's Objections to Magistrate's Report and Recommendation
 {¶ 11} In his fourth assignment of error, Father argues that the trial court erred in overruling several of his objections. In addition, Father challenges the court's (1) failure to award him custody of the children, (2) reduction of his parenting time and (3) failure to consider the Family Court Services' ("FCS") report and recommendation.
 {¶ 12} The trial court found that some of Father's objections met the particularity requirement outlined in Civ. R. 53(E)(3)(b), while others did not.[3] Upon our review of Father's objections, we find that he has essentially alleged that the trial court's decisions to reduce his parenting time and deny his request for custody of the children are against the manifest weight of the evidence. When we consider whether judgments are against the manifest weight of the evidence, we apply the following standard, taken from the criminal context, which requires that we:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 13} Father contests the trial court's decision to modify the shared parenting plan to reduce his parenting time and contends that the modification was not in the children's best interest. Under the current plan, Father had visitation with the children for three consecutive weekends out of the month and for the majority of the summer. The modified plan provides that Father shall have visitation with the children every other weekend and reduces his summer vacation time.
 {¶ 14} The "best interest of the child" is the overriding concern in any child custody case. Miller, 37 Ohio St.3d at 75; R.C. 3109.04(B)(1) and (C). R.C. 3109.04 states, in relevant part,
"(F)(1) In determining the best interest of a child * * * on an original decree allocating parental rights and responsibilities for the care of children * * *, the court shall consider all relevant factors, including, but not limited to:
"(a) The wishes of the child's parents regarding the child's care;
"* * *
"(c) The child's interaction and interrelationship with the child's parents * * *;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation; [and]
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" (Emphasis added.).
 {¶ 15} We note at the outset that we did not consider the testimony of several of Father's witnesses in our analysis of the court's decisions. We previously found that the trial court properly declined to consider this testimony as it did not concern "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." R.C.3109.04(E)(1)(a). In addition, Father contests the Magistrate's failure to consider the FCS report and recommendation. Father essentially contends that because the Magistrate made no reference in her decision to this report, she must not have considered it. Although the Magistrate did not mention this report in her decision, "when there is no evidence to the contrary, we will presume that the magistrate considered all relevant factors in determining custody." In re Johnson (June 6, 2001), 7th Dist. No. 705569, at *2, citing Evans v. Evans
(1995), 106 Ohio App.3d 673, 677. The fact that the report was commissioned by the court's own social worker and contained in the confidential family court file is enough to demonstrate that the Magistrate considered this report. Father has provided no evidence to the contrary. Moreover, the social worker's report is not contained in the record. As the Appellant, Father has the duty to ensure that the record contains this report. It is not this Court's duty to obtain such a document.
 {¶ 16} In reaching its decision that there was a change in circumstances warranting a modification of the shared parenting plan and that such modification was in the children's best interest, the trial court considered testimony from several witnesses. The eldest child testified that she and her brother were increasingly interested in spending time in the Hudson area as they have become more integrated into the Hudson community in the past few years. In addition, the children's main athletic activity, tae-kwon-do, takes place in the Hudson area. The children spend increasingly more time practicing and competing in tae-kwon-do as they mature and excel in this activity.
 {¶ 17} Since the divorce, it has become quite apparent that the parenting plan currently in place in ineffective. The plan is subject to varying interpretations and each party has used the plan's ambiguities to his or her advantage. When the shared parenting plan was created, the children were quite young and less able to articulate their opinions regarding the parenting situation. Since that time, the children have specifically expressed their desire to reside in Hudson. In addition, the children's lives have changed since the implementation of the plan as they have developed friendships in Hudson and are highly involved in activities that take place in the Hudson area.
 {¶ 18} In light of the testimony, the parties' apparent difficulty in executing the current parenting plan and the change in the children's lifestyles and maturity in the fives years since the plan's creation, we find that the court did not abuse its discretion in finding a change in circumstance which would warrant such a modification of the shared parenting plan.
 {¶ 19} Furthermore, we find that the court did not abuse its discretion in finding that such a reduction of Father's parenting time is in the children's best interest and is supported by the manifest weight of the evidence. See R.C. 3109.04. Both parents seek ample time with their children and appear more than willing and able to alter their schedules to facilitate this time. The children have expressed the desire to spend time with both parents and seemingly benefit from these relationships. Moreover, the children are ostensibly well adjusted to the Hudson community and are understandably interested in a visitation schedule which would enable them to regularly socialize with their friends and participate in their extra-curricular activities.
 {¶ 20} In contrast, Father and his wife testified that the children are involved in several activities near Father's home. Father contends that the children's closest friends and family also live near him and are central figures in the children's lives. He contends that Mother keeps the children isolated from friends and prohibits them from participating in any activity other than tae-kwon-do.
 {¶ 21} Although both parties have historically deviated from the parenting plan, the plan was modified, in part, to clarify the terms of the parenting plan. Therefore, we find that both parents are "more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights" under the new plan. R.C. 3109.04(F)(1)(f).
 {¶ 22} Obviously, there was conflicting testimony as to whether the children should spend more time with Father or Mother. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses and found that it was in the children's best interest to spend more time in Hudson.
 {¶ 23} Father also argues that the trial court erred in failing to award him custody of the children. In considering this challenge to the court's decision, we are mindful that an appellate court will not reverse a trial court's decision regarding the custody of children that is supported by competent and credible evidence absent an abuse of discretion. Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550, syllabus.
 {¶ 24} The trial court applied the factors outlined in R.C.3109.04 in denying Father's motion for reallocation of parental rights and responsibilities. The trial court considered ample testimony regarding the custody issue including that of the children's psychologist, guardian ad litem and attorney.
 {¶ 25} The children's psychologist testified regarding her interactions with the children and their parents. According to the psychologist, the children expressed a desire to reside with their mother in Hudson and visit their Father. The psychologist testified that she believed that the children's statements regarding their desire to reside with their Mother were reliable because the statements did not appear rehearsed and the children also expressed this desire in their drawings.
 {¶ 26} The children's guardian ad litem similarly testified that the children hope to remain in Hudson but wish to visit their father every other weekend. In contrast to the psychologist, she recommended that the children spend as much if not more time with Father than in the current arrangement.
 {¶ 27} The eldest child specifically testified that she wished to reside in Hudson with her mother and frequently visit her father. The children's attorney testified on their behalf and asserted that the children sought to remain with their mother, in Hudson. The eldest child's teacher testified that the child had quickly adjusted to the new school and was succeeding both socially and scholastically.
 {¶ 28} Although the court heard conflicting testimony regarding whether the children should spend more time with Father, we find less dispute regarding the appropriateness of maintaining Mother as the main residential parent. We are persuaded that it is not in the children's best interest to award custody to Father. Upon review, we find that the trial court's custody decision was also supported by the weight of the evidence and similarly find no abuse of discretion. Father's first and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN ITS CALCULATION OF A SUMMER PARENTING TIME SCHEDULE FOR THE CHILDREN."
 {¶ 29} In his second assignment of error, Father argues that the trial court erred in its calculation of the summer parenting schedule. Father asserts that the court intended to equalize the parties' summer parenting time and that such goal is not accomplished by the new schedule because the schedule was erroneously based on a twelve week summer vacation. According to Father, Hudson schools' summer vacation is actually ten weeks in duration.
 {¶ 30} Although Father raised an objection to the Magistrate's decision to reduce his summer parenting time from nine weeks to four weeks, Father did not object to the calculation of the summer parenting time schedule. We therefore find that Father failed to preserve this objection in the manner required by Civ. R. 53(E)(3)(d) and has therefore waived it.
 {¶ 31} Even if Father had preserved this objection, we would find no merit in his contention. Father failed to present any evidence that the court intended to equalize the parties' summer parenting time. Father's mere restatement of the summer parenting schedule does not establish that the court intended to equalize the parties' summer parenting time.[4] It is certainly plausible that the court based the new schedule on a ten week summer vacation break and intended that the children spend more time in Hudson than in Pennsylvania. Moreover, Father's contention that "reversing the current schedule would have been a more satisfactory and proper resolution of this matter" contradicts his contention that the court intended to equalize the parties' parenting time. In addition, Father failed to demonstrate that Hudson actually operates on a ten week summer vacation schedule. We overrule Father's second assignment of error.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN NOT REOPENING THE EVIDENCE IN THIS MATTER."
 {¶ 32} In his third assignment of error, Father argues that the trial court erred in failing to reopen the evidence. Father contends that the trial court should have reopened the evidence because there had been a change in circumstances during the period between the last evidentiary hearing, held on July 28, 2003, and the Magistrate's decision, issued on June 8, 2004. Father asserts that there was an additional change in circumstances, warranting reopening of the evidence, between the Magistrate's June 8, 2004 decision and the trial court's judgment entry of January 28, 2005. We disagree.
 {¶ 33} "Opening up a case for the presentation of further testimony is within the sound discretion of the trial court, and the court's action in that regard will not be disturbed on appeal unless it amounted to an abuse of discretion." In re Forfeitureof Property of Kusner, 2d Dist. No. 2003-CA-47, 2003-Ohio-6668, at ¶ 11, quoting State v. Black (Feb. 18, 2000), 2d Dist. No. 17384, at *3.
 {¶ 34} Father argues that the trial court erred in denying his request to reopen evidence because there was a change of circumstances, namely the continued interference with his parenting time and his relationship with the children, which warranted the court's consideration of additional evidence. We find that the trial court's failure to reopen evidence advanced the interests of justice and was within the trial court's discretion. The trial court had reviewed an abundance of conflicting evidence regarding the parties' alleged interference with each other's parenting time and relationship with the children. We cannot find that the trial court abused its discretion in declining to reopen the evidence. Had the court reopened the evidence, Mother would have also had the opportunity to introduce evidence of Father's actions during this time period. We find no value to reopening evidence and foresee such action doing little more than further delaying resolution of the parties' parenting and visitation issues. Obviously, the parties can always file additional motions if they deem them necessary. Father's third assignment of error is overruled.
 III. {¶ 35} Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, J., Carr, J. concur.
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] The prior decree at issue here is the parties' November 29, 2000 divorce decree.
[2] The Magistrate excluded the testimony of Kim O'Donell, Terri Dombroski, Laurie Sangimino and Marlene Ashton. Kim O'Donell testified:
A. "I would say that I never really saw her interact too much with the kids. So, I couldn't say whether she was fit or unfit."
Similarly, Terri Dombroski testified:
Q. "Okay. So, when was the last time you actually saw Ms. Andrachik interact with her kids? You can say if you don't remember the exact date.
A. "I don't remember the exact date. Q. "If you recall a year, it would help the court.
A. "A year. I don't recall.
Q. "Okay. How about four years ago?
A. "Yes, that's — well, no. It's after we stopped being friends.
Q. "And that was approximately at the end of '99?
Q. "Five years ago. That's fine. * * *"
In her testimony, Laurie Sangimino stated:
A. "I have not seen [Mother] interact with her children since 1998 if that's what you would like to know."
Marlene Ashton testified:
Q. "The interaction that you witnessed between Karen Andrachik and her children — her child, would have been approximately 1995?
"* * *
"* * *
A. "And that was your one and only interaction you have ever witnessed between Karen Andrachik and her children?
Q. "That I recall."
[3] Civ. R. 53(E)(3)(b) requires that all objections be specific and state the grounds of the objection with particularity. Furthermore, Civ. R. 53(E)(3)(d) states that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." We wish to clarify that objections such as No. 20 which alleges that the Magistrate erred in minimizing the report and recommendation of the guardian ad litem in this matter and No. 2 which asserts that the Magistrate's decision is contrary to law, fail to meet the requirements of Civ. R. 53(E)(3)(b).
[4] Under the new parenting plan:
"Father shall have visitation with the children during the summer as follows: mother shall have the first two weeks after school is out * * *. Thereafter, Father will have the next two weeks. Thereafter, the visitation will alternate every two weeks."